UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO PARRA PARRA (A-073-770-859),<br>Petitioner,<br>v.<br>WARDEN OF THE CALIFORNIA DETENTION FACILITY, et al.,<br>Respondents. | No. 1:26-cv-4293 DC CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Julio Parra Parra (A-073-770-859), a native and citizen of Cuba, filed an amended petition for writ of habeas corpus through counsel pursuant to 28 U.S.C. § 2241.[1] On June 15, 1994, petitioner entered the United States pursuant to Cuban Humanitarian Parole. On October 27, 2003, an immigration judge ordered him removed based on his aggravated felony conviction. After serving his criminal sentence, petitioner was placed under an Order of Supervision in 2020 by immigration officials and permitted to remain on release. On January 4 or 5, 2026, petitioner was re-detained by immigration officials and U.S. Immigration and Customs Enforcement ("ICE") officials issued a Notice of Revocation of Release on January 6, 2026. This

[1] Petitioner is proceeding in forma pauperis and is represented by appointed counsel. This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted.

## I. FACTUAL BACKGROUND

On June 15, 1994, petitioner, a native and citizen of Cuba, entered the United States pursuant to Cuban Humanitarian Parole. (ECF No. 15 at 1.) On October 27, 2003, an immigration judge ordered petitioner removed to Cuba based on his aggravated felony conviction for second degree murder with a deadly weapon, for which he was sentenced to 22 years of incarceration. (ECF No. 8-1 at 1-4 (removable pursuant to Immigration and Nationality Act ("INA") §§ 212(a)(2)(A)(i)(I) and 212(a)(7)(A)(i)(I)); ECF No. 15 at 3.) Petitioner did not appeal his removal order, which became administratively final on November 26, 2003. (ECF No. 11 at 1; ECF No. 11-1 at 2; ECF No. 15 at 3.)

Petitioner was released from his state criminal custody on June 16, 2020. (ECF No. 11 at 1; ECF No. 11-2 at 9; ECF No. 15 at 4.) After his release, petitioner was placed on an Order of Supervision by immigration authorities in 2020 and was permitted to remain on release. (ECF No. 11 at 1; ECF No. 15 at 3.)

On January 3, 2026, petitioner was arrested by local authorities for trespassing. (ECF No. 11-4 at 2; ECF No. 15 at 5.) On January 4, 2026, ICE encountered petitioner while he was in local custody and an immigration detainer was issued. (ECF No. 11-4 at 2.) Petitioner alleged in his original pro se petition and in his counseled amended petition that he was re-detained on April 23, 2026. (ECF No. 1 at 11; ECF No. 15 at 6.) Respondents refused to provide the dates of petitioner's re-detention in their answer to the amended petition and instead demanded that petitioner "be required to articulate his [detention] status" between January and April 2026.[2]

[2] Respondents state the following in their answer to the amended petition: "Petitioner's [detention] status between January and April 2026 is information that is within Petitioner's control. If it is relevant to his argument that his detention is unlawful he should be required to articulate his status during that time period and why it is relevant to the claims in his petition." (ECF No. 16 at 1-2.) This response is not well taken. First, this information is also relevant to the government's position in this case defending petitioner's continued detention, which the government asserts is lawful and does not exceed six months. (See ECF No. 8 at 2.) To claim otherwise is incorrect and not credible.

Second, the Court is concerned by the government's refusal to provide the dates of

(ECF No. 16 at 1-2.) In his reply, petitioner responded that his re-detention began in January 2026 and he submitted a recorded August 2026 interview with counsel with written transcripts of the interview in Spanish and in English. (ECF No. 17 at 2-5, Exhs. 1-3.) In his interview, petitioner clarifies that he arrived at California City, his current detention facility, in April 2026, which is the date listed on his original petition. (Compare ECF No. 1 at 11, with ECF No. 17 at 21-22.) Petitioner states that he was detained by ICE in Florida on January 4 or 5, 2026, and he has been in continuous detention since this date. (ECF No. 17 at 20, 22.) Petitioner was transferred from Florida to multiple different detention facilities in Texas, Arizona, Colorado, and then to California City in April 2026. (Id. at 20-21.) The Court finds that petitioner was re-detained on January 4 or 5, 2026.[3]

On January 6, 2026, ICE officials issued a Notice of Revocation of Release to petitioner, but it was not served on petitioner until April 23, 2026.[4] (ECF No. 11-3; ECF No. 15 at 4.) The Notice of Revocation of Release states that petitioner's release was revoked because he violated a condition of his release for "[e]xtensive criminal history and failure to report." (ECF No. 11-3 at 1.)

On June 10, 2026, ICE issued petitioner a Notice of Removal that ICE intended to remove petitioner to Mexico. (ECF No. 8-4; ECF No. 15 at 3, 6.)

## II. PROCEDURAL BACKGROUND

On June 4, 2026, petitioner filed his pro se petition for writ of habeas corpus, a motion to proceed in forma pauperis, and a motion to appoint counsel. (ECF Nos. 1-3.) On June 18, 2026, respondents filed an answer to the petition. (ECF No. 8.) Because the record did not contain

---

petitioner's immigration detention, which is information in the government's possession, custody, and control. It is the government, not petitioner, who has the complete details regarding petitioner's immigration detention. It is telling that the government does not indicate that it lacks this information; it simply refuses to provide it and instead demands that petitioner provide this information. (See ECF No. 16 at 1-2.)

[3] This timing is also consistent with the Form I-213, which indicates that on January 4, 2026, ICE encountered petitioner while he was in local custody and issued an immigration detainer, and the January 6, 2026 issuance of the Notice of Revocation of Release. (See ECF No. 11-4 at 2; ECF No. 11-3.)

[4] The government provides no explanation for why the Notice of Revocation of Release was not served on petitioner for over three months after he was re-detained. (See ECF No. 16.)

sufficient information to decide the issues presented, the Court ordered respondents to submit additional information, which respondents timely submitted on July 23, 2026. (ECF Nos. 9, 11.) On July 21, 2026, the Court granted petitioner's motion to appoint counsel and counsel was subsequently appointed. (ECF Nos. 10, 12.) On July 29, 2026, petitioner, now proceeding through counsel, filed a motion to amend the petition. (ECF No. 13.) On August 7, 2026, the Court granted the unopposed motion to amend, and set a briefing schedule on the amended petition. (ECF No. 14.) On August 14, 2026, respondents filed their answer to the amended petition and petitioner filed his reply on August 20, 2026. (ECF Nos. 16-18.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner challenges his continued detention based on the violation of the following: (1) ICE regulations governing revocation of release; (2) due process based on third country removal to Mexico; (3) the Fifth Amendment procedural due process clause. (ECF No. 15 at 7-12.) Respondents argue that petitioner is lawfully subject to detention under 8 U.S.C. § 1231(a)(6), and "was re-detained because he can now be removed and thus there are both changed circumstances and a significant likelihood of removal in the reasonably foreseeable future." (ECF No. 16 at 1, 2.) Despite this argument, respondents contend that petitioner bears

the burden of establishing that his detention is unlawful and the burden to show that his removal is not reasonably foreseeable. (ECF No. 16 at 1-2.) Respondents also assert that they should be permitted to continue the process of removing petitioner to a third country. (ECF No. 8 at 2.) Finally, respondents argue petitioner's detention is not prolonged but within the "presumptively reasonable post-removal period" as he was re-detained on April 23, 2026.[5] (ECF No. 8 at 2.)

**A. Claims One and Three: Post-Final Order Detention & Revocation of Release**

In claim one, petitioner argues that the government violated ICE regulations governing revocation of release. (ECF No. 15 at 7-9.) In claim three, petitioner argues that his re-detention violates the Fifth Amendment procedural due process clause. (Id. at 10-12.) Because these claims require examination of whether the government followed its own regulations that set out procedures in revoking release, procedures that protect important due process rights, the Court discusses these claims together. See Vu v. Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). Here, respondents state that the removal period began on June 16, 2020, when petitioner was released from his state criminal custody. (See ECF No. 11 at 2 (citing 8 U.S.C. § 1231(a)(1)(B)(iii)). Petitioner does not dispute this. (See ECF Nos. 15, 17.) Accepting this date for when the removal period began, it is clear that the 90-

[5] Respondents identify this April 2026 date of re-detention based on the original petition. (See ECF No. 8 at 1 (citing ECF No. 1 at 11).) As described above, when confronted with the discrepancy in re-detention dates, respondents refused to provide the date of petitioner's re-detention and demanded that petitioner provide this information instead. (See ECF No. 16 at 1-2.)

day removal period has long passed.

If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions. 8 U.S.C. § 1231(a)(3). After his release, petitioner was placed on an Order of Supervision by immigration authorities in 2020 and was permitted to remain on release. (ECF No. 11 at 1; ECF No. 15 at 3.) Petitioner was not removed.

Citing Zadvydas, respondents argue that six months is a presumptively reasonable amount of time to effect removal. (ECF No. 8 at 2.) Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." Id.

However, the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at 149. "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). Here, it is clear that petitioner has been detained well beyond the expiration of the 90-day removal period.

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be

returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). As stated above, the Notice of Revocation of Release dated January 6, 2026 states that petitioner's release was revoked because he violated a condition of his release for "[e]xtensive criminal history and failure to report." (ECF No. 11-3 at 1.) Respondents offer no argument to support that petitioner's supervision was revoked based on a violation of a condition of his release. (See ECF Nos. 8, 16.)

Respondents instead provide a different reason for the revocation: "Petitioner was re-detained because he can now be removed and thus there are both changed circumstances and a significant likelihood of removal in the reasonably foreseeable future. Petitioner can be removed to a third country, Mexico." (ECF No. 16 at 2.) The Court therefore focuses its analysis on the reason presented in respondents' briefing. The Court notes that respondents' abandonment of the basis for revocation in the January 2026 Notice of Revocation and complete change to a different basis undermines respondents' argument that revocation of petitioner's Order of Supervision was proper. For the reasons that follow, the Court finds that ICE has failed to establish a change in circumstances and that ICE failed to follow its own regulations in revoking petitioner's release.

1. Changed Circumstances

The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation. Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL 2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future[.]"); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). As the district court in Escalante found,

"[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3. Therefore, the Court must determine whether respondents have met their burden to show a changed circumstance indicating a significant likelihood of removal.

The only changed circumstance that respondents identify in petitioner's case is that petitioner can be removed to a third country (Mexico). (ECF No. 16 at 2.) This argument fails for multiple reasons. In 2003, the immigration judge ordered petitioner removed to Cuba. (ECF No. 8-1 at 4.) Respondents make no attempt to demonstrate that petitioner's removal to Cuba is likely in the reasonably foreseeable future and instead assert that petitioner is subject to removal to the third country of Mexico. (See ECF No. 16 at 2.) In addition, the Notice of Removal to a third country (Mexico) was not issued until June 10, 2026—over five months after petitioner was re-detained and after the January 6, 2026 Notice of Revocation of Release was issued; and after petitioner filed his first petition on June 4, 2026. Therefore, the changed circumstance of third country removal did not exist at the time petitioner's supervision was revoked in January 2026.

Second, respondents have not identified any specific steps taken with the Mexican government to arrange for petitioner's removal to that country. (See ECF No. 16.) Instead, respondents state that a travel document is not required to facilitate petitioner's removal because Mexico is part of the Electronic Nationality Verification program. (See id. at 2.) This is insufficient. See Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [petitioner] any time soon."). The phrase "significant likelihood" requires something more than a mere possibility that removal will occur. Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point…is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025). Respondents also do not explain why ICE has been unable to remove petitioner for almost six years after his release from state custody. "An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is

unlikely." Chun Yat Ma v. Asher, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012).

Petitioner was re-detained on January 4 or 5, 2026, and has been detained for nearly eight months without removal. The government has not met its burden of demonstrating that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future. Based on the current record, the Court concludes that petitioner's removal is not reasonably foreseeable and the petition should be granted. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (remedy is release upon a finding that removal was not reasonably foreseeable).

2. Compliance with Implementing Regulations

"ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

This Court also observes that 8 C.F.R. § 241.13(i)(2) requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked. See Duong v. Charles, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Tran v. Noem, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); Sphabmixay v. Noem, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 3, 2025). Here, the record does not show that a changed circumstance determination was made at or before petitioner's re-detention on January 4 or 5, 2026, where the Notice of Removal to a third country (Mexico) was not issued until June 10, 2026. Petitioner's re-detention violates 8 C.F.R. § 241.13(i)(2) because a changed circumstance determination was not made at or before petitioner' re-detention on January 4 or 5, 2026.

When revoking petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)." Sarail v. Bondi, 803 F. Supp. 3d

775, 787 (D. Minn. Sept. 3, 2025). Here, the Notice of Revocation of Release did not state that the revocation was based on changed circumstances and therefore, did not give petitioner any notice of the changed circumstances. (See ECF No. 11-3.) In addition, though the Notice of Revocation of Release was dated January 6, 2026, it was not served on petitioner until 3.5 months later on April 23, 2026, and respondents offer no explanation for this delay. (See id.; ECF No. 16.)

Petitioner also claims that he did not receive a prompt informal interview following his re-detention. (ECF No. 15 at 7, 9.) Section 241.13(i)(3) requires a prompt interview following re-detention: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." The Notice of Revocation also repeated these requirements regarding the prompt provision of an informal interview where petitioner would be given "the opportunity to respond to the reasons for the revocation and to provide evidence to demonstrate that your removal is unlikely." (ECF No. 11-3 at 1.) Respondents do not contest petitioner's claim that he did not receive a prompt informal interview following his re-detention or provide evidence indicating an interview took place where he was provided the opportunity to respond to the reasons for revocation.[6] (See ECF No. 16.)

The Court finds that respondents violated their own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the

[6] The Court notes that in other cases, the government has submitted evidence of the informal interview required by Section 241.13(i)(3).

reasonably foreseeable future." Id. Respondents' failure to notify petitioner of the "changed circumstances" asserted and failure to provide petitioner with a prompt interview following his re-detention violated 8 C.F.R. § 241.13(i)(3). Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.'" Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases). The Court finds that the petition should be granted as to claim one for violating ICE regulations.[7]

3. Due Process

This Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection. See Sanchez v. LaRose, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025). These protections include at least notice and an opportunity to be heard regarding the revocation. Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it."). In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation. See 815 F. Supp. 3d 1142, 1150 (S.D. Cal. Nov. 20, 2025). Constitutionally inadequate notice also often leads to

---

[7] The government may revoke petitioner's supervision and remove petitioner, but it must do so lawfully, following the requirements of the Constitution and its own regulations. It has failed to do so here.

constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient. See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner.") (internal citation omitted). A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. See Sarail A. v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025).

While this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Respondents identify no reason why adequate notice and an informal interview "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" were not provided to petitioner as required by their own regulations. See 8 C.F.R. § 241.13(i)(3). Respondents did not even provide petitioner with the Notice of Revocation of Release until April 23, 2026, 3.5 months after he was detained on January 4 or 5, 2026 after the Notice of Revocation of Release was issued and dated. (See ECF No. 11-3.)

For the reasons above, this Court recommends that the petition be granted as to claims one and three.

**B. Petitioner's Other Claim for Relief**

Because the Court recommends granting the petition based on claims one and three, the Court need not address any claim two raised in the petition. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi,

No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

**C. Remedy**

Based on the recommendation that the petition be granted as to claims one and three, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy. See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante litem is "the last uncontested status which preceded the pending controversy"). Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under a 2020 Order of Supervision before his re-detention in January 2026.

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The amended petition for writ of habeas corpus (ECF No. 15) be GRANTED as to claims one and three (regulatory and due process violations).
2. Petitioner Julio Parra Parra (A-073-770-859) be immediately released from ICE custody under the same conditions he was previously released in his 2020 Order of Supervision. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release. Respondents be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures.
3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of

the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 1, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/parr.4293.26.frs.RELEASE